Magen M. Fansher
316 Palo Verde Way
Vallejo, California 94589
Tel: (707) 309-4079
E-mail: Magenfansher@gmail.com



2021 SEP 14 PM 12: 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case. No. |
| | : | |
| **Plaintiff,** | : | 3:21-cv-99 |
| | : | |
| **v.** | : | |
| **TWO THOUSAND, SIX HUNDRED** | : | **ANSWER TO** |
| **FIFTY-FOUR AND 00/100 DOLLARS** | : | **VERIFIED COMPLAINT FOR** |
| **($2,654) IN UNITED STATES** | : | **FORFEITURE *IN* REM** |
| **CURRENCY,** | : | |
| | : | |
| **Defendant 1,** | : | |
| | : | |
| **FOUR THOUSAND AND 00/100** | : | |
| **DOLLARS ($4,000.00) IN UNITED** | : | |
| **STATES CURRENCY,** | : | |
| | : | |
| **Defendant 2,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **SIX THOUSAND AND 00/100 DOLLARS** | : | |
| **($6000.00) IN UNITED STATES** | : | |
| **CURRENCY,** | : | |
| | : | |
| **Defendant 3,** | : | |

## ANSWER TO COMPLAINT FOR FORFEITURE *IN REM*

I, Magen Fansher, hereby file my Answer and Affirmative Defenses to the Plaintiffs' Verified

Complaint for Forfeiture *In Rem* and admit, deny, and alleges as follows:

## RESPONSE TO NATURE OF THE ACTION

1) Answering Paragraph 1 of the Complaint, I deny that the Defendants (1, 2 and 3) *in rem* were furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter or used or intended to be used to facilitate any violation of this subchapter.

## RESPONSE TO DEFENDANTS *IN* REM

2) Answering to Paragraph 2 of the Complaint, I admit that ($2,654.00) in United States Currency was in my jacket, in my Nike duffle bag. I deny that the encounter with the DEA was consensual. The encounter was forced upon, in which I surrendered due to fear, and un aware of my constitutional rights.

3) Answering to Paragraph 3 of the Complaint, I admit that ($4,000.00) in United States Currency was in my wallet in my Gucci backpack. I deny that the encounter with the DEA was consensual. The encounter was forced upon, in which I surrendered due to fear, and un aware of my constitutional rights.

4) Answering to Paragraph 4 of the Complaint, I admit that ($6,000.00) in United States Currency was in the inner pocket of my Gucci backpack. I deny that the encounter with the DEA was consensual. The encounter was forced upon, in which I surrendered due to fear, and un aware of my constitutional rights.

## RESPONSE TO JURISDICTION AND VENUE

5) Answering to Paragraph 5 of the Complaint, as stated in Paragraph 1, I deny these allegations. They are false allegations, therefor the court does not have jurisdiction over the Defendants 1, 2 and 3.

6) Answering to Paragraph 6 of the Complaint, I deny these allegations and deny that the court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b)(1)(A) because there were no acts or omissions giving rise to the forfeiture of the defendants.

7) Answering to Paragraph 7 of the Complaint, I deny these allegations.

## RESPONSE TO BASIS FOR FORFEITURE

8) Answering to Paragraph 8 of the Complaint, I deny that the allegations of the Complaint are true and correct. The Defendants 1, 2 and 3 were not furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## RESPONSE TO FACTS

9) Answering to Paragraph 9 of the Complaint, I admit traveling from Dayton International Airport to San Francisco International Airport on September 22, 2020, on a one-way ticket. I deny the flight as being suspicious.

10) Answering to Paragraph 10 of the Complaint, I admit to buying a one-way plane ticket one day prior to travel. I have no knowledge of San Francisco, California and Dayton, Ohio, being *known* for illegal drugs.

11) Answering to Paragraph 11 of the Complaint, I have no known knowledge of San Francisco, California and Dayton, Ohio, being *known* for illegal drugs. I am unaware of illegal drug and drug couriers purchase their ticket within 72 hours of travel. I am unaware that booking a flight within 72 hours is illegal or contributes to suspicious

activities. I am unaware that I was being profiled, because the state I was from is known for illegal drugs.

12) Answering to Paragraph 12 of the Complaint, I admit to living in Brookville, Ohio at one time. I deny ever obtaining an Ohio's driver's license, these are false allegations under perjury of law.

13) Answering to Paragraph 13 of the Complaint, I deny any association or family business ties with the California business, Mediterranean Dream Olive Products LLC. I admit that my driver's license at the time (on September 22, 2020), stated my previous address 3082 Soscol Avenue Napa CA 94558. If you google the Mediterranean Dream Olive Products LLC, it states its business address as 3082 Soscol Avenue Napa, CA 94558.

14) Answering to Paragraph 14 of the Complaint, I am un aware of this at the time.

15) Answering to Paragraph 15 of the Complaint, I am un aware of this at the time.

16) Answering to Paragraph 16 of the Complaint, I deny the encounter and conversation with the DEA was consensual. I deny dropping my head and "visibly exhaling," as I was following covid-19 regulations with having my mask on. These are false accusations under perjury of law. If there is camera footage at the airport, in this area, it will not show this taking place. The two men then identified themselves as law enforcement officers and told me I had no choice but to speak with them and answer their questions. While walking into me, forcing me to walk to a designated secluded area, where people could not see me, in the corner of the airport. I suggested we move to a different area, where I could be visible to other people and hopefully a camera, because I was un sure of what was going on. I deny agreeing to speak with the officers for the second time. In fear of my safety, I then asked the two officers to identify themselves again, in which they did.

17) Answering to Paragraph 17 of the Complaint, I deny the conversation being consensual. I was instructed to walk towards the escalators from the officers, I was confused as to

why they wanted me to walk away from other people. At the time, I was wearing black flip flops with black socks that had white leaves on them. Before I was approached by the officers, I was on a phone call, at which I turned up the volume so the other person could witness the encounter as well.

18) Answering to Paragraph 18 of the Complaint, I admit my *next* destination was Dallas, Texas (where my layover occurred) and *final* destination was San Francisco, California. I admit I am not from Dayton, Ohio and I was in town to visit family.

19) Answering to Paragraph 19 of the Complaint, I admit to telling the Officers they needed a warrant to check my bags. A last minute one-way ticket doesn't supply sufficient evidence as being suspicious, as it never has in my entire lifetime of travel. Again, the encounter was not consensual, this encounter was denied multiple times. After being forcefully instructed to follow the commands of the two officers; I feared for my safety and followed direction. The officers advised me to take off my belongings, to be searched. I demanded a warrant or proof of these allegations, which none was provided.

20) Answering to Paragraph 20 of the Complaint, I did have one checked bag on the plane. The officers did advise me that there was a drug-sniffing canine on the way. Confident that there were never any drugs in my bags at any point, I waited for the canine to arrive. At no point did I have perspiration on my forehead area. These are false accusations under perjury of law, and if there is visible camera footage, it can show that. I only had a t-shirt on and was cold at this point. If at any point I "looked around," it was because I felt the eyes of others staring at me while I was being humiliated, harassed and profiled in public, due to the allegations.

21) Answering to Paragraph 21 of the Complaint, I did in fact tell the Officers that there was nothing in my bag. I wasn't agitated, again, I was being humiliated and profiled in public while bystanders stared at me the entire time. I admit to wearing a black Gucci backpack and holding my red and black Nike duffle bag.

22) Answering to Paragraph 22 of the Complaint, I was aware that we were waiting for the canine to arrive.

23) Answering to Paragraph 23 of the Complaint, I was aware that we were waiting for my checked bag to be taken off the plane.

24) Answering to Paragraph 24 of the Complaint, I admit my checked bag was a black hardshell American Tourister. I admit to asking for a female Officer to be present, I at no time wanted either male Officer to touch me, as they weren't practicing the six feet social distancing order throughout this entire encounter. After not being provided a female officer and fearing for my safety, I put my bags on the ground.

25) Answering to Paragraph 25 of the Complaint, I was aware we were waiting for the canine to arrive.

26) Answering to Paragraph 26 of the Complaint, I admit I observed the canine to my knowledge, not give a positive alert on all my bags. I observed Detective Stewart making the dog sniff round after round, and before the last round he whistled and made some type of commands, at which the canine then sat on top of each bag. This did not take place the first few rounds. When the canine was done, I proceeded to pick up my bags and one of the Officers shouted something I don't recall, and said the dog "hit" on all of my bags. They then told me I would not be leaving with my bags. I believe the canine team Detective Stewart and canine Weston, are in need of more training. Weston "hit" on all three of my bags, which per the investigation stated, no drugs were found in any of my bags.

27) Answering to Paragraph 27 of the Complaint, I admit I was given a barely legible receipt with contact information and told I would be contacted by one of the Officers. I had to ask for this information, it was not provided to me. I was never contacted by the Officers, and later on contacted Dayton Police Department, myself.

28) Answering to Paragraph 28 of the Complaint, I admit to asking to have my jacket, wallet, and reading book. The officer refused I could have any of my belongings, only allowing me to grab my ID and one credit card. When removing my drivers license from my wallet, officer Coverstone asked to see how much currency was inside. I displayed fourty, $100 US currency bills. This was not a large wad of money, as it fit in my small tri fold wallet. I left the money in the wallet, as advised.

29) Answering to Paragraph 29 of the Complaint, I admit that I was given the barely legible receipt.

30) Answering to Paragraph 30 of the Complaint, I admit I am unsure of where my bags went after the Officers took them out of my sight.

31) Answering to Paragraph 31 of the Complaint, I admit I am unaware of when the search warrant was granted or took place. I wasn't notified either.

32) Answering to Paragraph 32 of the Complaint, I admit these statements are true of Defendants 1, 2 and 3, as far as the location and amount of currency. I deny that there was any rubber-band present.

33) Answering to Paragraph 33 of the Complaint, I admit to having clothing, shoes and plastic vaccum-sealed bags in my suitcase. I travel with vaccum-sealed bags so I can bring larger items that wouldn't fit in my suitcase and needed to be suppressed by size (blankets, jackets, etc). I deny these bags smelling of marijuana.

34) Answering to Paragraph 34 of the Complaint, I am unaware of what they have done with my property at this point.

35) Answering to Paragraph 35 of the Complaint, I deny these allegations and accusations and they do not supply enough sufficient evidence for probable cause. The vacuum sealed

bags did not smell of marijuana, nor did they at any time conceal marijuana. Therefore, Defendants 1, 2 and 3, should not have been seized. These are false claims under perjury of law.

36) Answering to Paragraph 36 of the Complaint, there was ($2.654.00) in United States currency in the pocket of my jacket that was in my red and black Nike duffle bag.

37) Answering to Paragraph 37 of the Complaint, there was ($4,000) in United States currency in the wallet of my black Gucci backpack.

38) Answering to Paragraph 38 of the Complaint, there was ($6,000) in United States currency in the inner pocket of my black Gucci backpack.

39) Answering to Paragraph 39 of the Complaint, I admit after receiving paper work, I did file a claim with the DEA on December 23, 2020, asserting ownership interest in Defendants 1, 2, and 3. I was traveling with my life savings in hopes to invest in a new, start-up family business that didn't go as planned.

40) Answering to Paragraph 40 of the Complaint, the Defendants are not subject to forfeiture to the United States under 21 U.S.C. § 881 (a)(6) because they do not represent property furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such as an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## RESPONSE TO ANSWER TO CLAIM FOR RELIEF

(a) The Defendants 1, 2 and 3 *in rem* were not furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter or used or intended to be used to facilitate any violation of this subchapter.

(b) The court does not have subject–matter jurisdiction over the claims because the Defendants 1, 2 and 3 *in rem* were not furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter or used or intended to be used to facilitate any violation of this subchapter.

(c) I admit I was given notice of this and by replying I am showing interest in the Defendants 1, 2 and 3.

(d) The court does not have subject–matter jurisdiction over the claims because the Defendants 1, 2 and 3 *in rem* were not furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter or used or intended to be used to facilitate any violation of this subchapter.

(e) The court does not have subject–matter jurisdiction over the claims because the Defendants 1, 2 and 3 *in rem* were not furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter or used or intended to be used to facilitate any violation of this subchapter.

(f) Forfeiture of the Defendants 1, 2 and 3 is barred by the prohibition against excessive fines set forth in the Eighth Amendment to the United States Constitution.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The defendants (1, 2 and 3) *in rem* were not furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter or used or intended to be used to facilitate any violation of this subchapter. The plaintiff's seizure of the defendant property violates my Fourth Amendment right to be free from illegal searches and seizures.

### SECOND AFFIRMATIVE DEFENSE

There were no drugs found in any of the three bags. There were only allegations of the plastic vacuum sealed bags "smelling" of marijuana, which the plastic vacuum sealed bags were only in one of the bags. Yet, all three of the bags were confiscated and claimed to be "hit" on by a trained drug sniffing canine.

### THIRD AFFIRMATIVE DEFENSE

A last minute one-way ticket does not supply as sufficient evidence to be a "suspicious flight." If this is the case, why have I never been harassed before in my entire travel history of last minute one-way tickets? There are no known facts and these allegations are false; that the DEA Dayton office and services received information about this flight and itinerary. My flight to "DAY", was also booked as a last minute one-way ticket, and I was not stopped leaving "SFO" or landing in "DAY." If one way flights are suspicious in these areas, why was I not stopped coming into "DAY"? How and where was this information received as a suspicious flight and at what time? Also, last minute flights are usually discounted at a 30-60% rate.

### FOURTH AFFIRMATIVE DEFENSE

Stating on numerous accounts that the encounter was consensual, is a false claim. Stating that I dropped my head and visibly exhaled, is a false claim. Stating that I had and wiped sweat from my head, is a false claim. Stating that I obtained an Ohio's drivers license, is a false claim. Stating that I have family business ties with the Mediterranean Dream Olive Products LLC, is a false claim. These are false allegations and under perjury of law.

### FIFTH AFFIRMATIVE DEFENSE

Profiling an individual because of their clothing, does not supply as sufficient evidence.

### SIXTH AFFIRMATIVE DEFENSE

I am a thirty-six year old working professional and business major. The Defendants 1, 2 and 3 were saved up over the course of my lifetime. And I am in fact in the beginning stages of opening up a few small family businesses.

## SEVENTH AFFIRMATIVE DEFENSE

The government is estopped from obtaining a forfeiture judgment because it obtained the seizure warrant through incorrect, misleading or incomplete allegations.

## EIGHTH AFFIRMATIVE DEFENSE

The government cannot obtain a forfeiture judgment because it has not acted in good faith.

## NINTH AFFIRMATIVE DEFENSE

If you google the Mediterranean Dream Olive Products LLC, it states its business address (in 2018) as 3082 Soscol Avenue Napa, CA 94558. (when I resided there). That may or may be true before or after I resided there, that is out of my knowledge. I am unaware of the renter before me, it was an elder single woman that died in the apartment. My name or family name however, are nowhere to be found on any website or information that has to do with the Mediterranean Dream Olive Products LLC. These are false allegations under perjury of law. Also, per public information, I searched the California Secretary of State website, and there is no business of this name.

## TENTH AFFIRMATIVE DEFENSE

Forfeiture of the Defendants 1, 2 and 3 violates the Due Process Clause of the Fifth Amendment to the United States Constitution because law enforcement officers involved in pursuing the forfeiture have a financial incentive in securing forfeiture. State and federal law enforcement agencies involved in the forfeiture may retain proceeds from the forfeiture to fund their activities. And, on information and belief, individual law enforcement officials within the relevant state and federal law enforcement agencies have an incentive to forfeit property to ensure their job security.

## ELEVENTH AFFIRMATIVE DEFENSE

Forfeiture of the defendant currency is barred by the prohibition against excessive fines set forth in the Eighth Amendment to the United States Constitution.

**<u>VERIFICATION</u>**

I, Magen M. Fansher, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Answer to Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and the matters contained in the Answer are true to the best of my knowledge, information and belief.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date  9/12/2021

Magen M. Fansher

MAIL EXPRESS



FME 1-Day
POSTAGE PAID
VALLEJO, CA
94590
SEP 13, 21
AMOUNT
**$26.35**
R2307N153316-40

1007      45402

# PRIORITY MAIL EXPRESS®

# FLAT RATE ENVELOPE

## ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



PS10001000006

**UNITED STATES POSTAL SERVICE** ®  |  **PRIORITY MAIL EXPRESS** ®



EJ 722 609 251 US

**CUSTOMER USE ONLY**

FROM: *(PLEASE PRINT)*    PHONE ( 707 ) 809-4079

Magen Fansher
316 palo verde way
Vallejo, CA 94589

**DELIVERY OPTIONS** (Customer Use Only)

☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
  *Refer to USPS.com® or local Post Office™ for availability.*

TO: *(PLEASE PRINT)*    PHONE ( 937 ) 512-1400



U.S District Court of Clerk
Federal building
200 W. 2nd st. #712
Dayton, OH

ZIP + 4® (U.S. ADDRESSES ONLY)

45402-____ ____ ____

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

◀ **PEEL FROM THIS CORNER**

| | PAYMENT BY ACCOUNT (if applicable) | |
|---|---|---|
| USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No. | |

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
| 94590 | 09/14 | $ 26.35 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 09/13/21 | ☐ 10:30 AM ☐ 3:00 PM  ☐ 12 NOON | $ | $ |
| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
| 09:27 ☐ AM ☐ PM | | | |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ | $ 26.35 | |
| Weight | ☐ Flat Rate | Acceptance Employee Initials | |
| 3 lbs. 5 ozs. | $ | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, MARCH 2019        PSN 7690-02-000-9996

EP13F May 2020
OD: 12 1/2 x 9 1/2

  

UNITED STATES POSTAL SERVICE